CKR LAW LLP
1330 Avenue of the Americas, 14th Floor
New York, New York 10019
Telephone: (212) 259-7300
Facsimile: (212) 259-8200
David M. Banker, Esq.
Gilbert R. Saydah Jr., Esq.
dbanker@ckrlaw.com
gsaydah@ckrlaw.com

and

SSL LAW FIRM LLP
575 Market Street, Suite 2700
San Francisco, California 94105
Telephone: (415) 814-6400
Facsimile: (415) 814-6401
Ivo Keller, Esq.
ivo@ssllawfirm.com

*Counsel to Metropolitan Life Insurance Company*

| UNITED STATES BANKRUPTCY COURT<br>DISTRICT OF NEW JERSEY | |
|---|---|
| **Caption in Compliance with D.N.J. LBR 9004-1(b)** | |
| In Re:<br>E Z MAILING SERVICES, INC.,<br>d/b/a E Z WORLDWIDE EXPRESS,<br>d/b/a UNITED BUSINESS EXPERTS,<br><br>                                Debtor. | Case No.: 19-17900 (SLM)<br><br>Chapter: 11<br><br>Judge: Stacey L. Meisel<br><br>Related to Document Nos. 48 and 80 |

**OBJECTION TO CURE AMOUNT AND ADEQUATE ASSURANCE FOR VERNON
WAREHOUSE FACILITY BY METROPOLITAN LIFE INSURANCE COMPANY**

Metropolitan Life Insurance Company (the "Landlord") hereby files this objection (the "Objection") to the Debtors' Joint Motion for (i) Order (A) Approving Term Sheet Between the Debtors and QX Logistix LLC, (B) Approving Bidding Procedures for the Sale of the Debtors' Assets Related to their Vernon, California and Amazon Operations, and (C) Scheduling Final

Sale Hearing, and (ii) Order Authorizing and Approving (A) the Sale of Such Assets Free and Clear of Liens and Other Interests, Pursuant to Sections 363(b), (f), and (m) of the Bankruptcy Code, (B) the Assumption and Assignment of the Debtors' Lease of Real Property at 2050-2080 East 49th Street, Vernon, California, to QX Logistix LLC, Pursuant to Sections 365(a) and (f) of the Bankruptcy Code, and (C) Granting Related Relief, Doc. No. 48 (the "Sale Motion"), filed by the above-captioned Debtor and United Business Freight Forwarders, LLC (collectively, the "Debtors").[1]  In support of this Objection, Landlord respectfully states:

## BACKGROUND FACTS

1. On April 18, 2019, an involuntary case was commenced against the Debtors under chapter 11 of title 11 of the United States Code ("Bankruptcy Code").  On May 17, 2019, the Court entered a Consent Order for Relief Under Chapter 11 of the Bankruptcy Code Pursuant to 11 U.S.C. § 303(h), Doc. No. 47, making the Debtors debtors-in-possession under Chapter 11 of the Bankruptcy Code.

2. The Debtors, together with co-tenant King Exim, LLC, lease commercial warehouse space (the "Premises") from the Landlord pursuant to an unexpired lease of nonresidential real property (the "Lease") located at 2050 and 2080 East 49th Street, Vernon, California.  A copy of the Lease is attached to this Objection as Exhibit A.

3. Pursuant to the Sale Motion, the Debtors seek to assume and assign the Lease to QX Logistix LLC ("Assignee") as part of the Debtors' sale of assets to the Assignee.  However, the Sale Motion erroneously states that the cure amount for the assumption and assignment of the Lease is approximately $185,000.

4. On May 22, 2019, the Court entered an Order Authorizing and Approving (A) Term Sheet Between The Debtors and QX Logistix LLC, (B) Approving Bidding Procedures for the Sale of the Debtors' Assets Related to Their Vernon, California and Amazon Operations,

---

[1] Landlord understands that, pursuant to an Order entered on May 22, 2019, the Debtors were required to serve a cure notice on Landlord. As discussed below, Landlord has not received that cure notice, and therefore reserves all rights with respect to any information or statements that may be contained therein.

and (C) Scheduling Final Sale Hearing, Doc. No. 80 (the "Procedures Order"). The Procedures Order, at paragraph 5, required the Debtors to serve, within one day after entry of the order, (i) a written notice setting forth the proposed cure amount for the Lease, and (ii) information relating to adequate assurance of future performance under the Lease. To date, Landlord has received certain documents relating to the adequate assurance issue, but has not received the required cure notice.

5. The cure amount set forth in the Sale Motion is incorrect. As of May 24, 2019, there was a balance of $581,443.82 outstanding under the Lease. That amount consists of the following:

| Item | Amount |
| --- | --- |
| Rent, CAM Charges, and Additional Rent | $170,856.92 |
| Security Deposit Replenishment (Lease § 5(a)) | $195,274.08 |
| Abated Rent (Lease § 1.01(8)) | $194,400.00 |
| Legal Expenses (Lease § 11.03) | $20,912.82 |
| **Total** | **$581,443.82** |

6. Further, additional payments of $66,906 for base rent, and an estimated $22,248 for other charges, will be due under the Lease as of June 1, 2019.

7. The cure amount must be modified to reflect these outstanding amounts, and the Debtors or Assignee must either pay the amounts or provide adequate assurance that they will promptly be paid, before the Lease can be assumed and assigned.

8. Additionally, the Assignee and Debtor have provided insufficient evidence to provide adequate assurance of Assignee's future performance under the Lease. The documents which Assignee sent Landlord regarding this issue consisted solely of projected income statements and balance sheets for Assignee following the closing of the proposed sale transaction. Given that Assignee is a newly-formed entity, Landlord responded by requesting three years of historical financials for the parent entity of Assignee. As of the filing of this

Objection, that information has not been provided.

**CURE OBJECTION**

9. Section 365 of the Bankruptcy Code obligates the Debtors to promptly cure all existing defaults before assuming any unexpired lease of non-residential real property. See 11 U.S.C. § 365(b)(1)(A) and (B); *Agri Star Meat & Poultry, LLC v. Nevel Props. Corp. (In re Nevel Props. Corp.)*, 765 F.3d 846, 849 (8th Cir. 2014) (stating that a lease cannot be assumed unless all payment defaults are cured). Courts have held that the clear language of Section 365 requires a cure of all amounts outstanding under an unexpired lease:

> Where there has been a default, either pre- or post-petition [...], the debtor in possession may not assume an unexpired lease unless, at the time of assumption, it cures or provides adequate assurance that it will promptly cure the default, it compensates, or provides adequate assurance that it will promptly compensate the landlord for any actual pecuniary loss resulting from the default and it provides adequate assurance of future performance under the lease. 11 U.S.C. § 365(b)(1).

*In re Westview 74th Street Drug Corp.*, 59 B.R. 747, 754 (Bankr. S.D. N.Y. 1986); *see also*, *In re Horn & Hadart Baking Co.*, 19 B.R. 597, 598 (E.D. PA 1982).

10. Here, the correct cure amount for assumption and assignment of the Lease as of May 24, 2019 is $581,443.82. A ledger showing how that amount was determined is attached hereto as <u>Exhibit B</u> and incorporated herein by this reference.

11. The Debtors (or their successor) also remain responsible for all other accrued or accruing charges under the Lease, including obligations that have accrued but may not yet have been billed, and must pay such charges when they come due under the Lease. Any final order authorizing assumption and assignment of the Lease should clearly state that the Debtors (or their successor) will assume these obligations and pay them when due, regardless of whether they relate to the period before, or after, the assumption and assignment.

12. The Lease also requires the Debtors to indemnify and hold the Landlord harmless

with respect to any existing claims which may not become known until after the assumption and assignment of the Lease, examples of which may include claims for personal injuries at the Premises or damage to the Premises by the Debtors or their agents. Any assumption and assignment of the Lease must include the continuation of all indemnification obligations, regardless of when they arose. In the alternative, the Debtors must prove (by insurance or otherwise) that they can satisfy the indemnification obligations under the Lease for any claims that relate to the period before assumption and assignment of the Lease. Nothing in any assumption and assignment order should preclude the Landlord from pursuing the Debtors, their insurance, or any other party that may be liable under the Lease, and the Landlord requests that any order specifically preserve its right to pursue such rights irrespective of any resolution of cure amounts herein.

13. The correct cure amount set forth above includes compensation for attorneys' fees that Landlord has incurred and continues to incur in connection with its attempt to recover the other amounts outstanding under the Lease. Attorneys' fees and costs incurred in enforcement of the covenants, obligations, and conditions of a lease are proper components of a cure claim, and the Debtors or Assignee must pay these charges as part of the assumption and assignment of the Lease. *See* 11 U.S.C. § 365(b)(1)(A) and (B); *In re Entertainment, Inc.*, 223 B.R. 141, 152 (Bankr. N.D. Ill. 1998). The fact that a landlord uses bankruptcy procedures to enforce a lease should not preclude recovery of attorneys' fees and costs for such enforcement activity, particularly where the Bankruptcy Court is the exclusive forum where the landlord can obtain any relief, being foreclosed from state court relief by the automatic stay. *Id.*; *see*, also, *Three Sisters Partners, L.L.C. v. Harden (In re Shangra-La, Incorporated)*, 167 F.3d 843, 850 (4th Cir. 1999). The Supreme Court has upheld the enforceability of such attorneys' fees clauses, ruling that pre-petition attorneys' fee clauses were enforceable with respect to issues peculiar to bankruptcy law. *Travelers Casualty & Surety Co. of America v. Pacific Gas & Electric* (2007) 127 S. Ct. 1199, 1206.

14. Landlord has incurred attorneys' fees enforcing its rights under the Lease and,

pursuant to the Lease, is entitled to recover those attorneys' fees from the Debtors as an obligation under the Lease. Landlord estimates its attorneys' fees and costs through the hearing on assumption and assignment to be approximately $20,912.82.

15. The cure amount also includes replenishment of the tenant's security deposit, which Landlord applied against outstanding rent before the above captioned case was filed against the Debtors. Landlord is entitled to replenishment of the security deposit for two reasons. First, the Lease requires the Debtors to replenish the security deposit, and the Debtors' failure to do so as of the date of this Objection constitutes a default which must be cured before they can assume the Lease. 11 U.S.C. § 365(b)(1)(A). Second, Bankruptcy Code § 365(l) provides that where an unexpired lease is being assigned, "the lessor of the property may require a deposit or other security for the performance of the debtor's obligations under the lease substantially the same as would have been required by the landlord upon the initial leasing to a similar tenant." Given that Landlord specifically required the Debtors to post the same security deposit for the same Premises less than two years ago when they entered into the Lease, it should be beyond dispute that Landlord would have required the posting of the security deposit upon initial leasing to a similar tenant.

16. Landlord can only provide the information presently available regarding amounts owed by the Debtors, while reserving the right to amend this Objection as necessary to include any additional or unknown charges that arise, including but not limited to subsequent rent defaults, attorney fees, costs, and interest. There is no basis to impose upon the Landlord the equivalent of an administrative bar date, limiting its recourse to recovery of charges that may come due under the Lease in the future.

## ADEQUATE ASSURANCE

17. Before assuming a lease that is in default, a debtor must also provide adequate assurance of future performance of the lease obligations to the landlord. 11 U.S.C. § 365(b)(1)(C). *In re Future Growth Enterprises, Inc.*, 61 B.R. 469 (Bankr. E.D. Pa. 1986)

6

(lease could not be assumed where operating profit was too narrow to provide adequate assurance that arrearages could be cured).

18. Here, the Debtors and Assignee have not provided adequate assurance of Assignee's ability to perform under the Lease. The information provided to date consists solely of projection balance sheets and income statements, unsupported by any historical data, bank statements, or other concrete evidence of financial capabilities. Although Landlord requested three years of historical balance sheets and income statements from Assignee's parent company, that information has not been provided. Further, during negotiations concerning the cure amount, counsel and business representatives for Assignee repeatedly informed Landlord that if Landlord insisted upon recovering the abated rent component of the cure, the sale transaction would likely fall apart because Assignee had insufficient funds to pay that amount. These statements give Landlord little faith that Assignee will be able to perform on its obligations.

## **CONCLUSION**

19. Accordingly, Landlord respectfully requests that the Court require the Debtors and/or Assignee to (i) pay Landlord a cure in the amount set forth herein, and (ii) provide adequate assurance that the Assignee has sufficient financial resources to satisfy the tenant's obligations under the Lease following its assumption and assignment. Landlord reserves its right to supplement this request if additional unpaid expenses accrue.

Dated: May 29, 2019
      New York, New York

**CKR LAW LLP**

*/s/ David M. Banker*
David M. Banker
Gilbert R. Saydah Jr.
1330 Avenue of the Americas, 14th Floor
New York, New York 10019
Telephone: (212) 259-7300
Facsimile: (212) 259-8200
dbanker@ckrlaw.com
gsaydah@ckrlaw.com

and

**SSL LAW FIRM LLP**
Ivo Keller, Esq.
575 Market Street, Suite 2700
San Francisco, California 94105
Telephone: (415) 814-6400
Facsimile: (415) 814-6401
ivo@ssllawfirm.com

*Counsel to Metropolitan Life Insurance Company*